**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X          Case No.
STEFANIE NIVAL,

                                Plaintiff,          **COMPLAINT**

        -against-
                                      ***PLAINTIFF DEMANDS***
SUGAR FACTORY BROADWAY LLC                                         ***A TRIAL BY JURY***
d/b/a SUGAR FACTORY AMERICAN BRASSERIE,
and EDWIN DOE, *individually,*

                             Defendants.
-------------------------------------------------------------------------X

Plaintiff, STEFANIE NIVAL, by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC,

Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as

follows:

## NATURE OF THE CASE

1.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42

       U.S.C. § 2000e, et. seq. ("Title VII"), as amended by the Pregnancy Discrimination Act of

       1978 (the "PDA"), 42 U.S.C. § 2000e(k); The Americans with Disabilities Act of 1990, 42

       U.S.C. § 12101, et seq. ("ADA"); the New York State Human Rights Law, New York State

       Executive Law § 296 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, New

       York City Administrative Code § 8-107, *et seq.*, and seeking damages to redress the injuries

       she has suffered as a result of being **discriminated against, retaliated against and**

       **wrongfully terminated** on the basis of her **disabilities, sex/gender (female) and pregnancy**.

2.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

       §§201 et. seq. ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid wages

       (2) illegally retained gratuities, (3) liquidated damages, and (4) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid wages (2) illegally retained gratuities, (3) unpaid spread of hours premiums, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

4. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 12101 *et seq.,* and 28 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. §1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as Defendants reside within the Southern District of New York, and the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC") on  4/26/22 .

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated  7/6/22 , with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff STEFANIE NIVAL (hereinafter "NIVAL") is a resident of the State of New York, County of New York.

9. Corporate Defendant SUGAR FACTORY BROADWAY LLC d/b/a SUGAR FACTORY AMERICAN BRASSERIE is a limited liability company organized under the laws of the State of Delaware with an address for service of process located at National Corporate

Research, Ltd., 122 East 42nd Street, 18th Floor, New York, NY 10168 and a principal place of business at 1991 Broadway, New York, NY 10023 (the "Upper West Side Location").

10. Individual Defendant EDWIN DOE is a manager of the Corporate Defendant (collectively referred to as "Defendants"). At all times relevant hereto, upon information and belief, Defendant EDWIN DOE and Corporate Defendants are joint employers of Plaintiff. Specifically, upon information and belief, Defendants exercised control over Plaintiff and determined the matters governing the terms and conditions of Plaintiff's employment.

11. At all times relevant hereto, Plaintiff was employed as a server by Defendants at 1991 Broadway, New York, NY 10023, and was compensated at a rate of ten dollars ($10.00) an hour and worked approximately twenty-two (22) hours per week.

12. That at all times relevant hereto, Defendant EDWIN DOE ("DOE"), was and is a Manager of DEFENDANT SUGAR FACTORY BROADWAY LLC d/b/a SUGAR FACTORY AMERICAN BRASSERIE. Defendant DOE was Plaintiff's supervisor and manager and had supervisory authority over Plaintiff. Defendant DOE had the authority to affect the terms and conditions of Plaintiff's employment. Defendant DOE is sued herein individually.

## MATERIAL FACTS

### *As to Title VII, PDA, ADA, NYSHRL, NYCHRL*

13.   On or about the summer of 2019, Plaintiff began working for the Defendants as a server at a pay rate of ten dollars ($10.00) an hour before tip and worked approximately twenty-two (22) hours per week.

14.   Plaintiff's job responsibilities primarily focused on recording food and beverage orders from customers, communicating these orders to the kitchen staff, delivering these orders to the customers, and collecting the respective bills.

15.   Plaintiff worked for Defendants at 1991 Broadway, New York, NY 10023.

16.   At the time Plaintiff began working for Defendants, she was not pregnant.

17.   On or about mid-September 2021, Plaintiff became aware that she was pregnant.

18.   On or about early October of 2021, Plaintiff's co-workers asked Plaintiff during work hours if she wanted to accompany them to partake in alcoholic beverages following work hours. Plaintiff declined the offer and explained that she was pregnant within earshot of multiple other employees, including Defendant DOE.

19.   On or about early November of 2021, Plaintiff had a discussion with Defendant DOE that she was having difficulty physically travelling up and down flights of stairs due to labored breathing from her pregnancy.

20.   In response, Defendant DOE responded, "I have no one else to send upstairs." During this conversation, multiple servers who were not pregnant were present, working, and available.

21.   Defendant DOE was dismissive of Plaintiff's request for reasonable accommodation.

22.   On or about November 20, 2021, Plaintiff was the principal server for a large birthday party located in the upstairs area of the restaurant, and was given specific instructions by a patron regarding the celebration.

23.    During the course of Plaintiff's service, Plaintiff went downstairs to wash dishes.  As the building's hot water had not been functioning, Plaintiff assisted.

24.    When Plaintiff returned upstairs to the large birthday party, Plaintiff was told that Defendant DOE and another manager Paul [LNU] had serviced the party without adhering to the patron's specific instructions.

25.    Plaintiff and Defendant DOE had a verbal discussion with another manager Paul [LNU] regarding the interaction. Plaintiff stressed again that she could not work the upstairs room due to the physical restrictions from her pregnancy and stated "I shouldn't even be up here because I'm pregnant and I'm running out of breath." Upon Plaintiff turning to leave, Plaintiff heard Defendant DOE state in sum and substance, "I can't stand her pregnant ass. I can't wait until she's gone."

26.    Plaintiff immediately felt distressed and embarrassed, which caused her to cry and breathe heavily. She proceeded to the back-room area where multiple coworkers witnessed her emotional response to the interaction.

27.    On or about November 21, 2021, the following day, Plaintiff returned to work. During that specific workday, Plaintiff observed that none of her co-workers spoke to her. This was unusual as Plaintiff often spoke to her co-workers throughout the course of the workday.

28.    Plaintiff's next scheduled day of work was on or about November 26, 2021. On or about this date, Plaintiff returned to the restaurant and, upon her arrival, was pulled aside by three (3) managers: Edwin DOE, Natalee [LNU], and David [LNU].

29.    The three (3) managers informed her that she was suspended from that point on. They also informed her that an individual named Rebecca from Human Resources would contact her

regarding the details of her suspension by the following Monday. The managers directed Plaintiff to leave the premises and did not disclose the projected time period of the suspension.

30.     That same day, Plaintiff reached out to the aforementioned contact named Rebecca from Human Resources. Plaintiff inquired, "I just came in to work and was told that I was suspended until you reached out to me but no one told me why I was suspended. They all agreed on not knowing what the reason was?"

31.     On or about December 2 and 3, 2021, Plaintiff called SUGAR FACTORY and Human Resources four (4) times, collectively. On or about December 3, 2021, Plaintiff was left on hold for approximately ten (10) minutes and Plaintiff left a voicemail.

32.     As of the date of the commencement of this action, Plaintiff has not received a response to any of her inquiries. Nor has she been asked to return to work.

33.     While Plaintiff was working for the Defendants, none of the Defendants nor any of their representatives, agents, or employees ever attempted to discuss with Plaintiff any possible solutions or accommodations for her pregnancy.

34.     While Plaintiff was working for the Defendants, Plaintiff repeatedly suggested reasonable accommodation – such as only being scheduled to work the downstairs room, and each time the Defendants rejected these suggestions.

35.     Plaintiff was never provided with any plausible explanation as to why she was being suspended and has not been asked to return to work.

36.     Accordingly, based upon the close temporal proximity between the Plaintiff's repeated concern about her pregnancy, the following remark from Edward DOE alluding to her termination, and her constructive termination, it is clear that on or about November 20, 2021,

Defendants discriminated against, and retaliated against Plaintiff by terminating Plaintiff's employment solely due to her pregnancy, and sex/gender.

37. Based upon the close temporal proximity between Plaintiff's complaints that she was having difficulty performing due to not being accommodated and her subsequent constructive termination, it is clear that Plaintiff was constructively terminated in retaliation due to her pregnancy, and sex/gender.

38. While Plaintiff's request could have easily been accommodated, Defendants wholly refused to accommodate Plaintiff's pregnancy and instead constructively terminated her employment.

39. Defendants arbitrarily refused to grant Plaintiff reasonable accommodation, even though it would have posed no undue burden to them

40. Defendants arbitrarily and unlawfully refused to accommodate Plaintiff's pregnancy.

41. Furthermore, Defendants never even attempted to engage in any interactive process to try and figure out the best way to accommodate Plaintiff's pregnancy so that Plaintiff could continue her employment with Defendants.

42. Based on Defendants' actions and statements, Defendants disapproved of Plaintiff's pregnancy, and thus decided it was easier to simply constructively terminate her employment rather than deal with any "inconvenience" which the Defendants perceive accompanies employing a woman who is pregnant.

43. Upon information and belief, Defendants also falsely believed that Plaintiff's pregnancy would interfere with her ability to perform her job duties in the future.

44. Plaintiff was qualified for her position and could perform the duties of her job working for Defendants with a reasonable accommodation.

45.    Plaintiff felt, and continues to feel, offended, disturbed, and humiliated by the blatantly unlawful and discriminatory and retaliatory termination.

46.    But for the fact that Plaintiff was pregnant, Defendants would not have constructively terminated her employment.

47.    Plaintiff has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights and emotional distress.

48.    Defendants' actions and conduct were intentional and intended to harm Plaintiff.

49.    As a result of Defendants' actions, Plaintiff feels extremely degraded, victimized, embarrassed, and emotionally distressed.

50.    As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51.    As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court.

52.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

**MATERIAL FACTS**
*As to FLSA and NYLL*

53. At all times, Plaintiff was paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants:

    a. (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers who did not directly service customers participated in the tip pool, (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof, in violation of the NYLL.

54. Plaintiff was required to engage more than twenty percent (20%) of her working time in non-tipped related activities, including dishwashing, and polishing glassware and silverware. Even though Defendants required tipped employees to engage in non- tipped activities for hours exceeding twenty percent (20%) of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

55. Plaintiff suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement. Defendants implemented a policy at the Restaurants where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. The tip pool improperly included managers who did not directly service customers. As a result, Defendants illegally retained tips through the tip pooling arrangement by retaining a portion of the tips to be distributed to managers who did

not directly service customers. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

56.     Plaintiff, suffered from Defendants' retention of gratuities. Defendants' managers Jefferson Barragan Trestrepo, Bobby Barragan Trestrepo, Natalee [LNU], and Edwin DOE collected all tips at the end of shift to "count" them. Managers would secretly pocket tips while counting resulting in low tips even on busy days.

57.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff due to time shaving.

58.     Defendants knowingly and willfully operated their business with a policy of not paying proper wages to Plaintiff. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

59.     Defendants knowingly and willfully operated their business with a policy of not paying spread of hours premium to Plaintiff, in violation of the NYLL.

60.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

61.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

## CAUSES OF ACTION

### AS A *FIRST* CAUSE OF ACTION
### FOR *DISCRIMINATION* UNDER TITLE VII

62.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

63.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(k) provides, in pertinent part, that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USCS § 2000e-2(h)] shall be interpreted to permit otherwise.

64. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et. seq., for relief based upon the unlawful employment practices of the Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

65. Defendants violated the sections cited herein as set forth.

66. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et. seq.*, by discriminating against Plaintiff because of her gender (pregnancy).

## AS A *SECOND* CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

68. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

69. Defendants engaged in unlawful employment practice prohibited by discriminating and retaliating against Plaintiff with respect to the terms, conditions or privileges of

employment.

## AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

70.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
this complaint.

71.    Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L.
101-336), as amended, as these titles appear in volume 42 of the United States Code,
beginning at section 12101.

72.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section
12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall
discriminate against a qualified individual on the basis of disability in regard to job
application procedures, the hiring, advancement, or discharge of employees, employee
compensation, job training, and other terms, conditions, and privileges of employment. …
(b) (4) excluding or otherwise denying equal jobs or benefits to a qualified individual
because of the known disability of an individual with whom the qualified individual is
known to have a relationship or association."

73.    Defendants engaged in an unlawful discriminatory practice by discriminating against
Plaintiff because of her disability (Pregnancy).

74.    As such, Plaintiff has been damaged as set forth herein.

## AS A *FOURTH* CAUSE OF ACTION FOR RETALIATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

75.    Plaintiff repeats and realleges each and every paragraph above as if said paragraph was
more fully set forth herein at length.

76.    The ADA prohibits retaliation, interference, coercion, or intimidation.

77.     42 U.S.C. § 12203 provides:

a)      Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
b)      Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

78.     Defendants violated this section as set forth herein.

## AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE EXECUTIVE LAW

79.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80.     New York State Executive Law § 296 provides that   "1. It shall be an unlawful discriminatory practice:   (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

81.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her pregnancy and gender (female).

## AS A *SIXTH* CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK STATE EXECUTIVE LAW

82.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

83.   New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

84.   Defendants have engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's engagement in an activity protected under this law.

## AS A *SEVENTH* CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### (Individual Defendants)

85.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86.   New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

87.   Defendants violated the section cited herein as set forth.

## AS AN *EIGHTH* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

88.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89.   The Administrative Code of City of New York § 8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

90.     Defendants engaged in an unlawful discriminatory practice in violation of the
Administrative Code of City of New York § 8-107(1) by creating and maintaining
discriminatory working conditions, and otherwise discriminating against Plaintiff because
of her gender and pregnancy, resulting in a failure to grant her request for a reasonable
accommodation and Plaintiff's unlawful termination.

### AS A *NINTH* CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

91.     Plaintiff repeats and realleges each and every paragraph above as if said paragraph was
more fully set forth herein at length.

92.     The New York City Administrative Code §8-107(7) provides that it shall be unlawful
discriminatory practice: "For an employer . . . to discriminate against any person because
such person has opposed any practices forbidden under this chapter. . ."

93.     Defendants engaged in an unlawful discriminatory practice in violation of New York City
Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's
opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN *TENTH* CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK
### (Individual Defendants)

94.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

95.     The Administrative Code of City of New York § 8-107(6) provides that it shall be unlawful
discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of
any of the acts forbidden under this chapter, or attempt to do so."

96.     Defendants engaged in an unlawful discriminatory practice in violation of Administrative
Code of City of New York § 8-107(6) by aiding, abetting, inciting, compelling and coercing

the above discriminatory and unlawful conduct.

**AS AN *ELEVENTH* CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK**

97.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98.     The Administrative Code of City of New York § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor.  This sub-section states:

a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

1.   the employee or agent exercised managerial or supervisory responsibility; or

2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.   An employer shall be liable for an unlawful discriminatory practice committed   by a

person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

99.     Defendants violated the section cited herein as set forth.

### AS AN *ELEVENTH* CAUSE OF ACTION FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFF

100.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

102.    At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

103.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

104.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff for all hours due to Defendants' policy of time shaving.

105.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory proper wage to Plaintiff for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

106.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA to Plaintiff and FLSA Collective Plaintiffs by instituting an illegal tip pooling scheme in which managers who did not directly service customers retained a portion of the tips in the

tip pool.

107.    At all relevant times, Plaintiff suffered from Defendants' retention of gratuities. Defendants' managers collected and pocketed all tips received.

108.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff the full amount of wages due under the FLSA.

109.    Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of the Defendants.

110.    Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

111.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

112.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages due to time shaving, unpaid wages due to an invalid tip credit, damages representing disgorgement of illegally retained gratuities, plus an equal amount as liquidated damages.

113.    Plaintiff is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

### AS AN *TWELFTH* CAUSE OF ACTION FOR VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF

114.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

115.    At all relevant times, Plaintiff was employed by the Defendants within the meaning of the NYLL §§ 2 and 651.

116.    At all relevant times, the Defendants had a policy and practice of refusing to pay Plaintiff

for all of her hours worked due to Defendants' policy of time shaving.

117. Defendants willfully violated Plaintiff's rights by failing to pay her proper wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

118. Defendants willfully violated Plaintiff by instituting an illegal tip pooling scheme in which Class members were required to share tips with managers who did not directly service customers. In doing so, Defendants willfully deprived Plaintiff of her lawfully earned wages.

119. At all relevant times, Plaintiff suffered from Defendants' retention of gratuities. Defendants' managers collected and pocketed all tips received.

120. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiff.

121. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff the full amount of wages due under the NYLL.

122. Defendants willfully violated Plaintiff's rights by failing to pay "spread of hours" premiums to them for each workday that exceeded ten (10) or more hours.

123. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

124.   Due to the Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants unpaid wages due to time shaving, unpaid wages due to an invalid tip credit, damages representing disgorgement of illegally retained gratuities, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## PUNITIVE DAMAGES

125.   Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

126.   As such, punitive damages are appropriate as a result of Defendants' above-described conduct and Plaintiff demands Punitive Damages as against all Defendants.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by the **Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, New York State Human Rights Law**, and the **New York City Administrative Code**, in that Defendants discriminated against Plaintiff on the basis of her pregnancy and gender;

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D.      Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

G.      An award of unpaid wages due to time shaving due under the FLSA and the NYLL;

H.      An award of unpaid wages due to an invalid tip credit due under the FLSA and the NYLL;

I.      An award equal to the amount of the improperly retained tips withheld by Defendants;

J.      An award of unpaid spread of hours premiums due under the NYLL;

K.      An award of statutory penalties as a result of Defendants failure to comply with NYLL wage notice and wage statement requirements;

L.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

M.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

N.      An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

O.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

**Dated: New York, New York**
      October 4, 2022

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                        By:     _____
                                        Shawn Clark, Esq.
                                        Melissa Vo, Esq.
                                        *Attorneys for the Plaintiff*
                                        Phillips & Associates, PLLC
                                        45 Broadway, Suite 430
                                        New York, New York 10006
                                        **T: (212) 248 – 7431**
                                        **sclark@tpglaws.com**
                                        **mvo@tpglaws.com**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## <u>DISMISSAL AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

**Issued On: 07/06/2022**
**Charge No: 520-2022-06073**

**To:** Stefanie Nival
c/o Phillips & Associates, Attorneys at Law, PLLC 45 Broadway, Suite 430
New York, NY 10006

EEOC Representative & E-mail:   Christiana Doriety, Federal Investigator
christiana.doriety@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2022-06073.

On behalf of the Commission,

Digitally Signed By: Judy Keenan
07/06/2022

Judy Keenan, District Director

**Cc:**
Shawn R Clark
Phillips & Associates: Attorneys at Law, PLLC
sclark@tpglaws.com

*Please retain this notice for your records.*

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 520-2022-06073 to the District Director at Judy Keenan, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.